Rose **SLAYTON** et al., Plaintiffs,

v.

**MISSOURI PACIFIC RAILROAD COMPANY** et al., Defendants.

**ALLEGHANY CORPORATION** et al., Plaintiffs,

v.

**MISSOURI PACIFIC RAILROAD COMPANY** et al., Defendants.

Betty **LEVIN**, Plaintiff,

v.

**MISSISSIPPI RIVER FUEL CORPORATION** et al., Defendants.

Nos. 63 C 436(2), 64 C 48(2), 64 C 77(2).

United States District Court
E. D. Missouri, E. D.
July 13, 1964.
Order Sept. 18, 1964.

748

Harold C. Ackert, Ackert, Giesecke & Tompkins, St. Louis, Mo., and Pomerantz, Levy, Haudek & Block, New York City, for plaintiffs Rose Slayton and others.

Mark M. Hennelly, Guilfoil, Caruthers, Symington, Montrey & Daniel, R. H. McRoberts, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendants Missouri Pacific R. R. Co., Mississippi River Fuel Corp. and others.

Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., and Robert M. Loeffler, Donovan, Leisure, Newton & Irvine, New York City, for plaintiffs Alleghany Corp. and others.

Roberts P. Elam, St. Louis, Mo., Sherin & Lodgen, Boston, Mass., Szold, Brandwen, Meyers, Blumberg & Altman, John Lowenthal, New York City, for plaintiff Betty Levin.

MEREDITH, District Judge.

These three cases, consolidated for the limited purposes of pre-trial discovery and hearings on motions, in major part arise out of the agreement of the Boards of Directors of defendant Missouri Pacific Railroad Company (hereafter MoPac) and Texas and Pacific Railroad Company (hereafter T&P) to consolidate the two companies into Texas and Missouri Pacific Railroad Company (hereafter T&M), a new Delaware subsidiary of MoPac created for the purpose of the merger, upon approval of the merger by the Interstate Commerce Commission. Subsequent to the filing of the first of these cases, MoPac, T&P and T&M applied to the ICC for an order authorizing consolidation and issuance of securities by T&M. The application to the ICC, under 49 U.S.C.A. §§ 5(2) and 20a, stated, as had been announced earlier by MoPac, that the proposed merger plan would be submitted to their shareholders at an annual meeting on May 12, 1964, for approval by two-thirds of the aggregate of shareholders. Plaintiffs, all holders of Class B shares of MoPac, having filed these actions, defendants thereafter deferred any stockholders' meeting for approval of the proposed plan until the adjudication of the class voting right issue here involved

Separate motions to dismiss have been filed by the defendant Mississippi River Fuel Corporation, owner of the majority of Class A shares of MoPac, and certain individual defendant members of the Board of Directors of MoPac and by defendant MoPac. The three cases are similar, but not identical, there being some divergence in allegations as well as type of relief sought by plaintiffs on behalf of themselves representatively as Class B stockholders and derivatively for defendant MoPac. Similarly, there is a variety of and various combinations of relief sought—declaratory, injunctive and money damages. However, common to all three cases is the demand for a declaratory judgment that the proposed consolidation requires the approval of separate majorities of both Class A and Class B stockholders of MoPac. Defendants' separate motions to dismiss are directed to all phases of the several complaints, but we here treat such motions only as they relate to the declaratory issue of class voting rights on the proposed plan of consolidation. On this issue defendants seek dismissal on the ground that the complaints and the exhibits thereunto attached show on their face that plaintiffs are not entitled to so vote and fail to state a claim on which relief can be granted. The matter has been fully briefed by all parties and on April 10, 1964, oral argument was heard by the Court.

For the purpose of the motions, the allegations of fact in the complaints and the inferences reasonably to be drawn therefrom must be taken as true and not in issue. We therefore discuss the factual allegations as though proven and conclude as to the law. The crux of the issue presented is whether or not the plan of consolidation as approved by MoPac must be concurred in by separate majorities of Class A and Class B shareholders of MoPac.

Paragraphs 3 and 4, Article VII, Section D, of the Articles of Association of Missouri Pacific Railroad Company provide:

"(3) The Company shall not, without the consent, given in writing or by resolution adopted at a meeting duly called for that purpose, of the holders of record of at least a majority of the number of shares of the Class A Stock then outstanding and at least a majority of the number of shares of the Class B Stock then outstanding, (a) issue any shares of stock of the Company of any class now or hereafter authorized in addition to the shares authorized to be issued by the provisions of Section C of this Article VII, (b) create or issue any obligation or security of the Company convertible into or exchangeable for shares of stock of the Company of any class, (c) alter or change the preferences, qualifications, limitations, restrictions and special or relative rights of the Class A Stock or of the Class B Stock or (d) amend or eliminate any of the provisions of this paragraph (3).

"(4) Except as otherwise provided above in paragraph (3) of this Article VII, or as otherwise required by law, each share of Class A Stock and each share of Class B Stock shall have the same voting power, and the vote of the holders of all or any portion of any class of stock, as a class, shall not be required for any other action whatsoever to be taken or authorized by the stockholders of the Company, including any amendment to the Articles of Association. In all elections of directors each stockholder may cast as many votes in the aggregate as shall equal the number of voting shares which he is entitled to vote multiplied by the number of directors to be elected at the election, and each stockholder may cast the whole number of votes, either in person or by proxy for one candidate, or distribute them among two or more candidates, and the directors shall be those persons, in a number equal to the vacancies to be filled, who shall receive the greatest number of votes."

Defendants urge first that since neither "merger" nor "consolidation" is in terms employed in paragraph 3 of Section D of Article VII, the plan for consolidation necessarily falls within paragraph 4 of Section D of Article VII as "any other action" not requiring class voting. We have considered but found this contention to be without merit since what is proscribed by paragraph 3(c), Section D of Article VII, is "company action" without the consent of the majority of each class of shareholders, altering or changing the preferences, qualifications, limitations, restrictions and special or relative rights of the Class A stock or of the Class B stock without regard to the purpose of such company action, whether it be merger, consolidation or otherwise. The article does not attempt to set out specific types or methods of company action which might be employed to alter or change the relative rights. In plain language, it prohibits, unless class voting is observed, company action, without limitation and without specification as to type or method when such action "alter(s) or change(s) the preferences, qualifications, limitations, restrictions and special or relative rights of the Class A Stock or of the Class B Stock * * *"

Defendants next urge that since MoPac is not to be the surviving corporation

and the proposed consolidation will, if consummated, eliminate MoPac, the action will not be MoPac Company action, but rather that of T&M. Suffice it to say that the proposed merger is the subject of an agreement entered into by Mo-Pac on the authorization of its Board of Directors, and that MoPac at least recognizes that its consummation, resulting in the elimination of MoPac, requires at least some action by its shareholders even though questioning the requisite needed for approval. We conclude that the agreement to consolidate entered into by MoPac constitutes company action by defendant MoPac within the meaning of paragraph 3 of Article VII D if such consolidation as proposed would result in the effects enumerated in paragraph 3(c) and (d).

Thus, the ultimate question is whether the proposed plan of consolidation or merger involves "alter(ing) or chang-(ing) the preferences, qualifications, limitations, restrictions and special or relative rights of the Class A Stock or of the Class B Stock" or amends or eliminates any of the provisions of paragraph 3 of Article VII D. If it does, separate majorities of both classes are required for approval by terms of the Articles of Association, adopted pursuant to the plan of reorganization of MoPac under Section 77 of the Bankruptcy Act, which plan was approved by the ICC on or about July 29, 1954, (290 ICC 477), approved by this Court on February 25, 1955, and confirmed by this Court on September 19, 1955.

Under applicable Missouri law, the voting requirements for adoption of the proposed plan are controlled by the Articles of Association of Missouri Pacific Railroad Company, RSMo 1959, § 351.-270.

Further, under 49 U.S.C.A. § 5(11) a carrier's authority to merge or consolidate as approved by the ICC is conditioned on the assent "of a majority, unless a different vote is required under applicable State law, in which case the number so required shall assent, * *."

The Class A and Class B shares of MoPac were issued pursuant to the aforesaid plan of reorganization.

The issued and outstanding capital stock of MoPac consisted, as of December 16, 1963, of 1,849,576 shares of Class A no par value stock and 39,731 shares of Class B no par value stock.

Defendant Mississippi owns 1,071,895 shares of Class A stock of MoPac, or about 57% of the number of shares of the entire issued and outstanding stock of MoPac.

MoPac owns approximately 83.6% of the only class of issued and outstanding stock of The T&P.

Plaintiffs Slayton, Proskauer, Mendelsohn, Alfred L. Rose and Dorothy B. Rose are the owners of 260 shares of Class B common stock of MoPac.

Plaintiff Alleghany Corporation is the beneficial owner of in excess of 20,000 shares of Class B common stock of MoPac.

Plaintiff Empire Trust Company holds the shares of Class B common stock of MoPac, of which plaintiff Alleghany is the beneficial owner, as voting trustee for Alleghany.

Plaintiff Levin is the owner of 85 shares of Class B common stock of MoPac.

Class A shares of the reorganized company were issued to the preferred stockholders of the debtor corporation on the basis of one Class A share for each share of old preferred stock and one Class A share for each $100 of dividends accrued on the old preferred stock.

The Class B shares of the reorganized company were issued to the common stockholders of the debtor corporation on the basis of one share of Class B stock for each 20 shares of old common stock.

In approving the plan of reorganization, the ICC declared that since the Class A stock was issued to the preferred stockholders of the debtor corporation in the entire amount of the par value of their stock plus unpaid dividends, the Class A stock of the reorganized company

should not participate in the earnings of the reorganized company beyond non-cumulative dividends not to exceed $5.00 per share in any one year and should not participate in the assets of the reorganized company beyond $100 per share and further declared, in providing for the issuance of the Class B stock in the reorganized company to the common stockholders of the debtor corporation, that the Class B stock would be entitled to all residual earnings and assets after the limited participation provided for the Class A stock (290 ICC 477, pp. 598, 600).

The plan of reorganization as formally approved by the ICC directed:

"The certificate of incorporation (of the reorganized corporation) shall permit the authorization from time to time of additional shares of common stock of either class, but shall specifically provide that the new company shall not alter or change the rights of holders of either class of stock or authorize the issuance of additional shares of either class or of any other class or of participating or convertible preferred stock, without the consent of the holders of not less than a majority of the number of shares of common stock of each class at the time outstanding." (290 ICC 477, p. 665)

The preferences, qualifications, limitations, restrictions and special and relative rights of the Class A stock and the Class B stock, as provided by the Articles of Association of MoPac, as amended pursuant to the aforesaid plan of reorganization and as approved and directed by this Court, include the following:

*Class A Stock.* The Class A stockholders shall be entitled to receive, when and as declared by the Board of Directors, dividends in cash in an amount not exceeding $5.00 per share in any calendar year. Such dividends shall be non-cumulative without regard to the availability in any calendar year of earnings or any other funds lawfully available for the payment of dividends. Dividends paid on the Class A stock shall not in any event exceed $5.00 per share in any calendar year. In the event of any liquidation or dissolution or winding up of MoPac, the Class A stockholders shall be entitled to receive, out of the assets of MoPac available for distribution to its stockholders, $100 per share together with any dividends declared and unpaid on the Class A stock.

*Class B Stock.* After full $5.00-per-share dividends upon the Class A stock to the end of any current calendar year have been paid, or declared and a sum sufficient for the payment thereof set apart for such payment, the Class B stockholders shall be entitled to receive such dividends, without restriction as to amount, as may be declared by the Board of Directors from any funds lawfully available therefor. In the event of any liquidation or dissolution or winding up of MoPac, the Class B stockholders shall be entitled, to the exclusion of the Class A stockholders, to receive all the assets of MoPac remaining after satisfaction of the claims of the Class A stockholders as aforesaid.

Under the proposed plan of consolidation, each Class A and each Class B share of MoPac would be exchanged for four shares of $25 par value common stock of the consolidated company and each share of the T&P would be exchanged for four shares of $25 value common stock in the consolidated company.

The proposed consolidation (under which Class A shares, entitled to dividends limited to $5.00 per year and to $100 per share on liquidation or dissolution to $100 per share, and under which Class B shares, entitled after payments of Class A $5.00 dividends to unrestricted dividends, save as they are declared by the Board of Directors, and upon liquidation or dissolution, entitled to receive all assets remaining after satisfaction of Class A claims, are both to be exchanged for identical common shares of a new company) seems so plainly and obviously to alter and change the preferences, qualifications, limitations, restrictions

and special and relative rights of the Class A and the Class B shares as not to require discussion. It matters not to whose advantage the plan accrues nor whether the plan be fair or unfair. The question is whether the two classes' relative rights, restrictions and limitations are to be altered and changed. It is patent that alteration and change of relative rights, preferences and limitations and restrictions in respect to dividends and upon dissolution are inherent in the plan for the exchange of the two classes of stock for identical common stock in the proposed new company. We draw such a conclusion without regard for the graphically demonstrated financial effect of the exchange contemplated:

As of September 30, 1963, the consolidated net assets of MoPac were $394,-721,242. The equity of the Class A stock in such assets, limited to $100 per share, was $184,957,600 or 47% of the total. The remaining equity of $209,763,642, constituting 53% of the total, accrued to the Class B stock, equivalent to $5,280 per share.

Consummation of the proposed plan would, as at September 30, 1963, give to the holders of the Class B stock of Mo-Pac, in exchange for their Class B stock, common stock of the consolidated corporation having an equity value of $7,917,-594 (the equivalent of $199 per share of Class B stock), or 2% of the total, in the consolidated corporation, and would give to the Class A stockholders of MoPac, in exchange for their Class A stock, common stock of the consolidated corporation having an equity value of $368,523,721 (the equivalent of $199 per share of Class A stock), or 94.6% of the total (the remaining 3.4% going to the minority stockholders of the T&P), in the consolidated corporation.

Consummation of the proposed plan not only would change the present relative participation in equity of the Class A and Class B stockholders in MoPac from 47% and 53%, respectively, to 98% and 2%, respectively, in the consolidated corporation, but also would destroy the Class B stockholders' constantly accruing percentage increase of the total equity and fix the relative equity participation of the Class B stockholders in the corporate enterprise permanently at 2%.

■ The plan of consolidation, if consummated, will result in the elimination of MoPac. Hence, we conclude also that such elimination of MoPac will obliterate the provisions of paragraph 3 of Article VII, Section D, which, thus, will require for approval a majority of the number of Class A shares of MoPac and a majority of the number of Class B shares of MoPac as provided by Article VII, Section D, Paragraph 3(d).

It, therefore, follows that defendants' motions to dismiss as they relate to class voting rights on the proposed plan of consolidation will be overruled. Decision on all other issues raised by the motions to dismiss will be reserved.