Rose SLAYTON, Joseph M. Proskauer, Walter Mendelson, Alfred L. Rose, and Dorothy B. Rose, Plaintiffs,

v.

MISSOURI PACIFIC RAILROAD COM-PANY et al., Defendants.

ALLEGHANY CORPORATION and Empire Trust Company, a corporation, as Voting Trustee, Plaintiffs,

v.

MISSOURI PACIFIC RAILROAD COM-PANY et al., Defendants.

Betty LEVIN, Plaintiff,

v.

MISSISSIPPI RIVER FUEL CORPORA-TION et al., Defendants.

Jane HARRIS and Nathan Stutch, Plaintiffs,

v.

MISSISSIPPI RIVER FUEL CORPORA-TION et al., Defendants.

Nos. 63 C 436(2), 64 C 48(2), 64 C 77(2), 64 C 340(2).

United States District Court
E. D. Missouri, E. D.
Jan. 12, 1968.

**526**

Harold C. Ackert, Ackert & Tompkins, St. Louis, Mo., and Pomerantz, Levy, Haudek & Block, New York City, for Slayton, Proskauer, Mendelson, A. L. Rose and Dorothy Rose.

Mark M. Hennelly, Gilbert P. Strelinger and Robert Yost, and Guilfoil, Symington, Montrey & Petzall, St. Louis, Mo., for Missouri Pacific R.R. Co.

Bryan, Cave McPheeters & McRoberts, St. Louis, Mo., and Hendren & Andrae, Jefferson City, Mo., for remaining defendants.

Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., and Donovan, Leisure, Newton & Irvine, New York City, for Alleghany Corp. and Empire Trust Co.

Roberts P. Elam, Clayton, Mo., Sherin & Lodgen, Boston, Mass., and Szold, Brandwen, Meyers, Blumberg & Altman, and John Lowenthal, New York City, for Betty Levin.

Roberts P. Elam, Clayton, Mo., Szold, Brandwen, Meyers, Blumberg & Altman, and John Lowenthal, New York City, for Harris and Stutch.

Sullivan & Cromwell, New York City, for Mississippi River Fuel Corp.

Leon Leighton, New York City, for Missouri Pacific R.R. Co.

## MEMORANDUM

MEREDITH, District Judge.

The Court has received applications from counsel for plaintiffs for attorneys' fees and expenses incurred in connection with Slayton, et al., v. Missouri Pacific Railroad, et al., No. 63 C 436(2); Alleghany Corporation, et al., v. Mississippi River Fuel Corporation, et al., No. 64 C 48(2); Levin v. Mississippi River Fuel Corporation, et al., No. 64 C 77(2); and Harris, et al., v. Mississippi River Fuel Corporation, No. 64 C 340(2).

Plaintiffs Slayton, et al., were represented by the law firm of Pomerantz, Levy, Haudek and Block of New York, and Ackert and Tompkins of St. Louis. Plaintiff Alleghany Corporation (hereinafter referred to as "Alleghany") was represented by the firms of Donovan, Leisure, Newton, and Irvine of New York, and Fordyce, Mayne, Hartman, Renard and Stribling of St. Louis. Plaintiffs Levin and Harris were represented by John Lowenthal of New York, Maxwell Brandwen of Szold, Brandwen, Meyers and Altman of New York, Roberts Elam of St. Louis, and Alvin Levin of Sherin and Lodgen of Boston.

The suits giving rise to these applications were brought as class actions by plaintiffs as representatives of holders of Class B stock in the Missouri Pacific Railroad Company (hereinafter referred to as "MoPac").

In December 1963, the Board of Directors of MoPac approved a proposed plan of consolidation of MoPac and the Texas and Pacific Railway Company into a new corporation to be known as The Texas and Missouri Pacific Railroad Company. In its application to the Interstate Commerce Commission for authorization of the proposed consolidation, MoPac stated that the plan would be submitted to its stockholders for approval on the basis of a collective, rather than a class, vote. At this time there were two classes of MoPac stock totalling 1,896,008 shares. Of these 1,856,277 shares were Class A stock, having a limited annual return of $5.00 per share and a fixed value on liquidation of $100 per share, and 39,731 shares were Class B shares, whose holders were entitled to receive such dividends as the Board of Directors declared, without restriction as to amount, and to receive, on liquidation, all the assets of MoPac remaining after satisfaction of all the claims of Class A shareholders.

Over one-half of the Class A stock was owned by Mississippi River Fuel Corporation (hereinafter referred to as "Mississippi").

As of September 30, 1963, the consolidated net assets of MoPac were $394,-721,242. The equity of the Class A stock was $100 per share, or $184,957,600, which constituted forty-seven percent of the total. The equity of the Class B stock was $5,280 per share, or $209,763,-642, which constituted fifty-three percent of the total.

Under the proposed plan of consolidation, each share of MoPac stock, regardless of class, would have been exchanged for four shares $25.00 par value common stock of the consolidated company, thereby changing the relative participation in equity of the Class A and Class B shareholders from forty-seven percent and fifty-three percent, respectively, to ninety-eight percent and two percent, respectively, and destroying the Class B shareholders' constantly accruing percentage increase of the total equity by fixing their equity participation in the corporation enterprise permanently at two percent. (See Slayton v. Missouri Pac. R. Co., D.C., 233 F.Supp. 747.)

Each plaintiff brought suit to compel class voting on the consolidation plan, thereby requiring a majority of each class to approve of it and asked for other relief. The parties agreed to limited consolidation on a motion to dismiss and the decision in the first instance went solely to the issue of voting rights of the classes of stock.

On July 13, 1964, this Court upheld the separate class voting rights of the MoPac shareholders under the corporation's charter and the applicable federal and state law, and denied defendants' motions to dismiss. 233 F.Supp. 747. Thereafter, defendants moved for certification for an interlocutory appeal under 28 U.S.C. § 1292(b). This Court granted the motion, and the Court of Appeals allowed the appeal. On April 19, 1966, the Court of Appeals reversed the District Court, holding that class voting was not required. Mississippi River Fuel Corp. v. Slayton, 8 Cir., 359 F.2d 106.

Plaintiffs petitioned the Supreme Court of the United States for writs of certiorari to review the judgment of the Court of Appeals, which writs were granted on October 10, 1966. Separate briefs and reply briefs were filed by plaintiffs Levin and Alleghany, and oral arguments were had before the Supreme Court on January 19, 1967.

The Supreme Court reversed the Court of Appeals, holding that class voting was required by MoPac's charter and applicable federal and Missouri law, and remanded to this Court for further proceedings consistent with the Supreme Court's opinion, Levin v. Mississippi River Fuel Corp. at 386 U.S. 162, 87 S.Ct. 927, 17 L.Ed.2d 834.

In March 1967, MoPac and The Texas and Pacific Railway abandoned the consolidation plan and withdrew it from consideration by the Interstate Commerce Commission. After various conferences had been held and proposals for terminating the litigation had been made, this Court entered a declaratory judgment on June 30, 1967, in all four actions, upholding class voting rights of MoPac shareholders. At the same time, the Court decreed that the suits were properly maintained as class actions, and set July 31, 1967, as the date for a hearing to determine whether to dismiss the actions without prejudice and with costs payable by defendants to plaintiffs, and reserving jurisdiction to entertain applications for plaintiffs' expenses and counsel fees. At that hearing, this Court disposed of all issues save those raised by plaintiffs' applications for expenses and counsel fees.

The law firms of Donovan, Leisure, Newton and Irvine, and Fordyce, Mayne, Hartman, Renard and Stribling, seek counsel fees and reimbursement of expenses only from MoPac. Pomerantz, Levy, Haudek and Block and their St. Louis counsel, Ackert and Tompkins, seek counsel fees and reimbursement of expenses primarily from MoPac, and secondarily from Mississippi, on the grounds that the latter is guilty of "inequitable conduct". Messrs. Lowenthal, Brandwen, Levin and Elam seek counsel fees and reimbursement of expenses from MoPac with a plea that Mississippi and defend-

ant Directors of MoPac be required to participate in the liability therefor.

■ Class and derivative suits are expressly permitted by Rule 23, Federal Rules of Civil Procedure, and the law is well settled that plaintiffs' successful prosecution of such class actions vests the Court with power to award counsel fees and expenses in appropriate circumstances. Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882); Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Jesser v. Mayfair Hotel, Inc., 360 S.W.2d 652, 15 A.L.R.2d 389 (S.Ct.Mo.1962); German Evangelical St. Marcus Congregation v. Archambault, 404 S.W.2d 705 (S.Ct.Mo. 1966); Mercantile-Commerce Bank & Trust Co. v. Southeast Arkansas Levee Dist., 106 F.2d 966 (8th Cir. 1939).

■■ When a shareholder proceeds, at his own expense, to protect an interest common to other shareholders and of benefit to the corporation, he is entitled to reimbursement from the corporation which benefited from his efforts. When a plaintiff proceeds strictly for his own advantage, the litigation is "private litigation" and he must pay his own counsel fees and expenses.

Defendants argue that plaintiffs' sole purpose in bringing suit was to enhance the value of their property, i. e., the Class B shares of stock, and that under these circumstances there is no lawful basis to assess counsel fees and expenses against MoPac, Mississippi or the Directors of MoPac. Plaintiffs argue that substantial benefits were conferred upon MoPac and all its shareholders because (1) there was a final adjudication of the voting rights of MoPac's two classes of stock in merger and consolidation, and (2) the consolidation plan, which would have been instituted by means of improper voting and which would have resulted in the corporation committing an *ultra vires* act detrimental to the corporation, was abandoned.

A judicial declaration of voting requirements for MoPac shareholders on merger and consolidation is a benefit to MoPac. In their Application for Permission to Take an Appeal from An Interlocutory Order, defendants stated that the question of voting requirements in mergers and consolidations is "a matter of great importance to both MoPac and to its stockholders" and Mississippi's briefs to the Court of Appeals stated that such a determination was important because it would apply to any plan of merger or consolidation.

The fact that the merits of this particular plan and the question of class voting might have been determined by the Interstate Commerce Commission does not detract from the benefit accruing to MoPac from having the determination made, ultimately, by the Supreme Court of the United States.

The case of Jesser v. Mayfair Hotel, Inc., supra, indicates that the benefit conferred is of sufficient magnitude and importance to support an award of attorneys' fees. In *Jesser*, defendant hotel company's stock was placed in a voting trust pursuant to a reorganization decree. A majority of the voting trust certificates was held by defendants, a minority was held by a number of individuals, including plaintiffs. The voting trustees, as legal owners of the stock, proposed to sell the minority shares to a company associated with themselves, and plaintiffs succeeded in preventing the trustees from consummating the proposed sale by means of a successful class action for an injunction. The Supreme Court of Missouri found that

"A trust beneficiary who prevents a wrongful disposition of trust assets renders a benefit to the trust estate as much as the one who recovers back property wrongfully disposed of."

and concluded that the preservation of the integrity of the voting scheme was a sufficient benefit to the voting trust to justify an award of counsel fees and expenses against defendant hotel company and the (voting) trust estate. The individual trustees were not, however, held personally liable for any part of these fees.

■ While the case at bar does not involve a voting trust, the principles of the *Jesser* case are applicable to the preservation of the voting scheme permitted by the corporate charter and the applicable state and federal laws. Based on such application, the Court finds that MoPac derived sufficient benefit from the declaratory judgment entered in this case to support charging attorneys' fees and expenses against it. [See also Berger v. Amana Society, 235 Iowa 378, 111 N.W. 2d 753 (1962), and 257 Iowa 956, 135 N.W.2d 618 (1965), in which plaintiffs, as minority Class A shareholders, succeeded in invalidating a charter amendment which would have destroyed their redemption rights, for which action the Supreme Court of Iowa allowed counsel fees on the grounds that plaintiffs' success was a "corporate benefit" and, therefore, compensable by the corporation.]

The defendants in this case point out that there has been no judicial determination by this Court, the Court of Appeals, or the Supreme Court, that the plan in question was unfair or that any fraud has been committed by Mississippi, the Directors of MoPac, or anyone else. Defendants further point out that the benefit, if any, derived from this lawsuit was to the "B" stockholders and not the MoPac as a corporation. They also point out that there is no showing in the record that Mississippi had anything to do with the drafting, adoption or promulgation of the proposed plan or that any of the Directors of MoPac had any personal interest in this matter or that the Directors acted in any way, except in good faith. Among other cases cited by defendants is Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). This case holds that attorneys' fees are not allowable in a Lanham Act case, 15 U.S.C. §§ 1051–1127, where the statute does not provide for attorneys' fees and also points out that attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.

The *Fleischmann Distilling Corp.* case, supra, approves the principles set out in Sprague v. Ticonic Nat. Bank, supra. *Sprague* specifically holds at page 167 of 307 U.S., at page 780 of 59 S.Ct.:

"And so, the circumstances under which the petitioner enforced the fiduciary obligation of the Ticonic Bank— the relation of its vindication to beneficiaries similarly situated but not actually before the court * * * and doubtless other considerations—must enter into the ultimate judgment of the District Court as to the fairness of making an award, * * *. In any event such allowances are appropriate only in exceptional cases and for dominating reasons of justice."

■ The Court here is of the opinion that the instant case is an exceptional case and that in order to do justice, plaintiffs' attorneys should be allowed a fee to be paid by MoPac. While it is true the merits of the plan of consolidation have never been judicially passed on, it does not take any further inquiry than a reading of the balance sheet of MoPac, coupled with the plan, to determine its inherent unfairness to the B stockholders. The plan essentially would have taken from the B stockholders an equity in excess of $200,000,000 and given it to the A stockholders.

This is sufficient reason to award fees to the attorneys for the plaintiffs. This plan has now been abandoned. The voting rights and relative equities of A and B stockholders have been determined. The record before this Court is insufficient to make an award of fees against either the Directors of MoPac or Mississippi.

Having determined that plaintiffs' attorneys should be awarded attorneys' fees and expenses, and from whom these fees and expenses should be collected, the only issue remaining is what fees are reasonable in the circumstances of this case?

■ There is no dispute that in awarding counsel fees and expenses in actions of this sort, the courts have discretion to make reasonable awards. [See

e. g., Murphy v. North American Light & Power Co., 33 F.Supp. 567 at 571 (S.D. N.Y.1940); Smolowe v. Delendo Corp., 136 F.2d 231 at 241, 148 A.L.R. 300 (2nd Cir. 1943), cert. den. 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446.] The factors to be included are:

"the amount recovered for the corporation; the time fairly required to be spent on the case; the skill required and employed on the case with reference to the intricacy, novelty and complexity of issues; the difficulty encountered in unearthing the facts and the skill and resourcefulness of opposing counsel; the prevailing rate of compensation for those with the skill, experience and standing of the attorneys, accountants or others involved; the contingent nature of the fees, with the accompanying risk of wasting hours of work, overhead and expenses (for it is clearly established that compensation is awarded only in the event of success); and the benefits accruing to the public from suits such as this." Angoff v. Goldfine, 270 F.2d 185, at 189 (1st Cir. 1959).

The services rendered to Alleghany by Donovan, Leisure, Newton and Irvine, are outlined in detail in their verified application for a fee. The request by that firm is based on the number of hours which the firm's partners and associates devoted to this case. Time sheets indicate that partners spent a total of 1,893½ hours and associates spent a total of 1,239¼, or total time of 3,132¾ hours. Affidavits and testimony before the Court show that the customary charge in New York for handling litigation of the importance and difficulty of this case is $75.00 per hour for partners' time and $35.00 per hour for associates' time. Thus, the total charge for partners' time is $142,012, and for associates' time is $43,374, which together total $185,386.

The expenses incurred by this firm in connection with this litigation are supported by vouchers and receipts in nearly every instance. These expenses total $25,838.56, a large portion of which is printing expense. These fees and expenses have either been partially paid or agreed to by Alleghany, the client, regardless of the outcome of this case and this, in the opinion of the Court, is the greatest test of all as to them being reasonable.

The services rendered to Alleghany by the law firm of Fordyce, Mayne, Hartman, Renard and Stribling in this litigation are set forth in detail. The requested fee is based on the 340 hours which partners of the firm devoted to this case, and the 35 hours which associates of the firm devoted to the case. In view of the fact that primary responsibility for the litigation rested with Donovan, Leisure, Newton and Irvine, applicant Fordyce, Mayne, Hartman, Renard and Stribling state that the reasonable value of its services is $35.00 per hour for partners' time and $25.00 per hour for associates' time, for a total of $12,775.00. In addition, this applicant seeks reimbursement for itemized expenses totalling $739.53. These fees have also been partially paid or agreed to by Alleghany, regardless of the outcome of this suit.

The Court finds that these fees and expenses are reasonable, and accordingly, an order will be entered allowing applicant Fordyce, Mayne, Hartman, Renard and Stribling the sum of $13,514.53.

Whatever fees and expenses paid by Alleghany to its attorneys and recovered in this suit, will be refunded to Alleghany.

The services rendered to plaintiffs in this litigation by John Lowenthal, and the firms associated with him, were rendered on a fee basis wholly contingent both on plaintiffs' success and on the allowance of fees being awarded by this Court.

This set of plaintiffs' attorneys point out that defendants employed seven teams of attorneys to oppose these suits. These attorneys for defendants were:

(1) Bryan, Cave, McPheeters & McRoberts, St. Louis, Missouri

(2) Guilfoil, Caruthers, Symington & Montrey, St. Louis, Missouri

(3) Hendren & Andrae, Jefferson City, Missouri

(4) Mark M. Hennelly, Gilbert P. Strelinger and Robert Yost, St. Louis, Missouri

(5) Arnold & Porter, Washington, D. C.

(6) Sullivan & Cromwell, New York City

(7) Leon Leighton, New York City

The skill and resourcefulness of the attorneys for defendants are well known to this Court.

Lowenthal, et al., affirm that during the three and a half year period of the litigation, an aggregate of about 5,500 hours on approximately 475 separate days, including nights, Saturdays, Sundays, and holidays, was spent on the case, including 32 days in St. Louis or Washington. Applicants state that for services of this nature performed for a regular retainer client on a cash (non-contingent) basis, they would have charged $375,000, but that for the same services rendered on a contingent-fee basis for clients not expected to become regular clients, the applicant attorneys would, if free to negotiate a fee with their clients, base rates not only on the amount of time spent, but also on the amount at stake, and the results achieved in the litigation. In the light of these facts, applicants Lowenthal, et al., submit that the reasonable value of their services in this litigation is greater than the $550,000 which they request as fees, plus the $12,504.85 as reimbursement for expenses incurred in the litigation.

The Court finds that the expenses of $12,504.85 are reasonable and will be allowed.

The firms of Pomerantz, Levy, Haudek and Block of New York, and Ackert and Tompkins of St. Louis, together, seek $750,000 in attorneys' fees, plus reimbursement for expenses of $2,799.26 and $43.98 for a total of $2,843.24. The expenses are outlined in a schedule of disbursements, and plaintiff Slayton's share of the cost of printing the petition for certiorari accounts for nearly one-half

of this amount. All of the expenses are reasonable and will be allowed.

Applicants Pomerantz, et al., state that the proper criterion for assessing fees in class actions of this nature is benefits achieved. Measured in terms of benefits to the Class B stock, the increase in its market value which applicants attribute to the results of this litigation, totalled $53,800,000; the avoided decrease in its book value was $254,040,014, and the avoided annual earnings loss to the Class B shareholders, based on a price-earnings ratio of 11, (which is the average of all railroads throughout the nation in 1966) was $17,111,347.

Applicants also point out that where the client pays his lawyer, win or lose, he saves because he, not his lawyer, assumes the risk of failure, but that in cases taken on a contingent-fee basis, the lawyer accepts the risk of failure and his success should be compensated accordingly.

Mr. Pomerantz' firm has specialized in this type of corporate litigation for thirty-three years, and has been described as "one of the country's foremost specialists in this type of litigation", Angoff v. Goldfine, supra, at 193. In his affidavit, Pomerantz states that in noncontingent cases of this type, his fee is $115 per hour, Mr. Haudek's fee is $75 per hour, and the time of the firm's associates is billed at $35 per hour. He estimates that a fair allocation of office overhead, secretarial, stenographic, clerical, and other employee activity attributable to this case during the period it was in the office amounted to about $40,000, which is covered by the fee he requests. Mr. Pomerantz and the lawyers associated with him, except for local counsel, kept no record of time spent.

They submitted, however, that in the present case, it would be unfair to assess fees on the basis of *quantum meruit*, because that was not the nature of the bargain. In support of this argument, Mr. Pomerantz points out that taking the increase in the market value of the Class B stock as a measure, the $750,000 fee requested represents less than two per-

**532**

cent of the benefit accruing to the Class B shareholders.

In determining what overall fee plaintiffs' attorneys should be allowed in a case of this type, the Court must consider that this involved no trial, no discovery, but was limited to briefs and oral argument before the District Court, briefs and oral argument before the Court of Appeals, briefs and oral argument before the Supreme Court, in addition to the research necessary to prepare the briefs and make the oral argument. It proceeded essentially as one case from start to finish.

It is to be noted that on behalf of plaintiffs, three separate briefs and reply briefs were filed with the District Court and the Court of Appeals; before the Supreme Court, Alleghany's attorneys and Slayton's attorneys joined in the briefs and Levin's attorneys filed separate briefs.

The oral argument before the Supreme Court was conducted by Alleghany's attorneys and Levin's attorneys.

The Court is of the opinion that $175,000 is a reasonable fee for Slayton's attorneys Pomerantz, Levy, Haudek and Block of New York and Ackert and Tompkins of St. Louis, and it will be allowed.

The Court is of the opinion that $175,000 is a reasonable fee for John Lowenthal, the firms of Szold, Brandwen, Meyers and Altman of New York, and Sherin and Lodgen of Boston, and Roberts Elam of St. Louis. This amount will be allowed.

The total of all fees allowed plaintiffs' lawyers is $548,161.00 and the total of expenses is $41,926.18. Considering all the applicable facts and the law, these fees and expenses are reasonable. The division of these amounts among the three sets of lawyers is also reasonable. Judgment will be rendered in favor of the plaintiffs' lawyers and against MoPac for the foregoing amounts.