LEVIN *v.* MISSISSIPPI RIVER FUEL CORP. ET AL.

No. 352. Argued January 19, 1967.—Decided February 27, 1967.*

*Together with No. 359, *Alleghany Corp. et al.* v. *Mississippi River Fuel Corp. et al.,* also on certiorari to the same court.

*John Lowenthal* argued the cause for petitioner in No. 352. With him on the briefs was *Maxwell Brandwen.*

*Breck P. McAllister* argued the cause for petitioners in No. 359. With him on the briefs was *William E. Haudek.*

*Robert H. McRoberts* argued the cause for respondents Mississippi River Fuel Corp. et al. in both cases. With him on the brief was *John H. Hendren. Dennis G. Lyons* argued the cause for respondent Missouri Pacific Railroad Co. in both cases. With him on the brief was *Daniel A. Rezneck.*

MR. JUSTICE CLARK delivered the opinion of the Court.

The ultimate issue in these cases is whether the holders of the Class B stock of the Missouri Pacific Railroad Company (MoPac) are entitled to vote separately, as a class, on the proposed plan of consolidation of MoPac and Texas and Pacific Railway Company (T & P) into the newly formed Texas and Missouri Pacific Railroad Company (T & M). An application has been filed with the Interstate Commerce Commission requesting permission to effect a plan of consolidation under §§ 5 (2) and 5 (11) of the Interstate Commerce Act, as amended, 54 Stat. 905, 908 (1940), 49 U. S. C. §§ 5 (2) and 5 (11). MoPac's Board of Directors has announced that its Class B shareholders are not entitled to vote on the plan separately and apart from its Class A shareholders, and that it intends to submit the plan only to the collective vote of the Class A and Class B shareholders.

Three separate declaratory judgment actions were filed by different Class B shareholders seeking a declaration

that the plan requires the separate approval of the holders of the Class B shares by majority vote. Upon a limited consolidation of the cases, the District Court held that MoPac's Articles of Association prohibited the consolidation unless class voting was observed and that § 5 (11)[1] of the Interstate Commerce Act, by adopting state law, required the separate approval of each class of shareholders. 233 F. Supp. 747. The Court of Appeals reversed on the ground that, despite Missouri law, the "plenary character of § 5 (11) . . . with its consequent preemptive nature" compelled a contrary result. 359 F. 2d 106, at 119. We granted certiorari. 385 U. S. 814. We have concluded that Missouri law, as provided by § 5 (11), is controlling on the point and that the judgment must, therefore, be reversed.

I.

*Background of the Parties and the Litigation.*

MoPac, a Missouri corporation, is an interstate common carrier railroad. It had been in reorganization proceedings under § 77 of the Bankruptcy Act, as amended,

---

[1] Section 5 (11):

"The authority conferred by this section shall be exclusive and plenary, and any carrier or corporation participating in or resulting from any transaction approved by the Commission thereunder, shall have full power (with the assent, in the case of a purchase and sale, a lease, a corporate consolidation, or a corporate merger, of a majority, unless a different vote is required under applicable State law, in which case the number so required shall assent, of the votes of the holders of the shares entitled to vote of the capital stock of such corporation at a regular meeting of such stockholders, the notice of such meeting to include such purpose, or at a special meeting thereof called for such purpose) to carry such transaction into effect and to own and operate any properties and exercise any control or franchises acquired through said transaction without invoking any approval under State authority . . . ."

11 U. S. C. § 205, until January 1, 1955.[2]  After those proceedings terminated, the corporation's preferred and common stock was replaced by two classes of $100 stated capital no par voting shares: Class A, which is preferentially entitled to noncumulative dividends not to exceed $5 per share annually, and Class B, which is entitled to all the earnings and the equity in excess of the Class A preferences.  MoPac's Articles of Association, Art. VII, § D (3), provide that class voting shall not be required save as to four types of corporate change, none of which shall be effected without the separate consent of the record holders of a majority of the Class A and the Class B shares.  The four specified changes are: (1) the issuance of additional shares; (2) the creation or issuance of any MoPac obligation or security convertible into or exchangeable for MoPac shares; (3) an alteration or change in "the preferences, qualifications, limitations, restrictions and special or relative rights of the Class A Stock or of the Class B Stock"; and, finally, (4) the amendment or elimination of any of the foregoing requirements.

MoPac has 1,849,576 shares of Class A stock and 39,731 shares of Class B stock outstanding.  T & P was incorporated by an Act of Congress in 1871 and is also an interstate railroad of which MoPac owns 82.86% of the outstanding shares of stock.  Mississippi River Fuel Corporation (Mississippi) is a Delaware corporation and owns a majority (57.95%) of the Class A shares of the stock of MoPac.  Alleghany Corporation (Alleghany) is a Maryland corporation and owns a majority (51%) of the Class B stock of MoPac, subject to a voting trust. T & M is a Delaware corporation organized for the

---

[2] See *Missouri Pac. R. Co. Reorganization*, 290 I. C. C. 477 (1954); *In re Missouri Pac. R. Co.*, 129 F. Supp. 392 (D. C. E. D. Mo. 1955), aff'd *sub nom. Missouri Pac. R. Co. 5¼% S. S. B. C.* v. *Thompson*, 225 F. 2d 761 (C. A. 8th Cir. 1955).

purpose of being the consolidated company upon the merger of MoPac and T & P.

The agreement and plan of consolidation were approved by the Board of Directors of MoPac and T & P in December of 1963. The plan provided for an exchange of each MoPac share (without regard to class) for four shares of the new corporation and for an exchange of the T & P stock (other than that owned by MoPac) on a basis of one share of T & P for 4.8 shares of the new company. In January of 1964, the three companies filed a joint application with the Interstate Commerce Commission for an order under § 5 (2) of the Act authorizing the consolidation and the issuance of securities by T & M under § 20a. In this application MoPac advised that it would submit the proposed plan to its stockholders, for approval, by May of 1964 on the basis of a collective, rather than class, vote.

There are a total of six individual petitioners, each of whom owns only a nominal number of Class B shares, and Alleghany which owns, as aforesaid, a majority of those shares. The respondents are MoPac, T & P, Mississippi, and some of their directors or officers, only one of whom owns any Class B stock of MoPac. The first of the three suits which this cause involves was filed prior to the submission of the plan to the Commission; the second and third subsequent thereto. Each of the suits attacks the plans of consolidation, alleging, among other things, that the Class B stock has a much greater value than that of the Class A and that the exchange is unfair; that the collective voting plan would violate the Articles of Association, the law of Missouri (and, therefore, § 5 (11) of the Act) and would result in irreparable injury to the Class B shareholders. Each complaint prays for a declaration that the plan of consolidation requires the separate vote of each class of stock. At trial the parties agreed that the court should

first pass upon the voting rights question. The District Court held that class voting was required and certified the issue to the Court of Appeals which permitted an interlocutory appeal under 28 U. S. C. § 1292 (b). Further proceedings in the District Court were stayed.

As we have indicated, the Court of Appeals held that, even though MoPac's Articles of Association required a class vote on consolidation and Missouri law, therefore, demanded such a vote, it nevertheless was "impressed with the significance of the national transportation policy and its emphasis on railroad consolidation, with the stated exclusive and plenary character of § 5 (11), and with its consequent preemptive nature." 359 F. 2d, at 119. The Court felt that, by virtue of the federal statute, it was compelled to conclude that it should apply the general standard as to voting rights, *i. e.*, the majority of all voting shares, rather than honor the exception, *i. e.*, class voting, as provided under Missouri law.

## II.

*Conclusion.*

We believe the Court of Appeals erred in so construing § 5 (11) of the Act. That section specifically provides that voluntary consolidations of railroads must have the assent "of a majority [vote of all shares], unless a different vote is required under applicable State law, in which case the number so required shall assent, of the votes of the holders of the shares entitled to vote . . . ." As the Court of Appeals held, this section "bows in the direction of state law." 359 F. 2d, at 114. Both the District Court and the Court of Appeals decided that Mo. Rev. Stat. c. 351 was "the applicable state law." As both courts found, § 351.055 (3) authorizes the issuance of classes of shares of stock and § 351.270 provides that where "the articles of incorporation require the vote or concurrence of the holders of a greater portion of the shares, or of any

class or series thereof, than required by this chapter with respect to such action, the provisions of the articles of incorporation shall control this section." But the Court of Appeals concluded that since § 351.425 [3] permitted the plan to be approved by the vote of at least two-thirds of all the outstanding shares, § 5 (11) required that it control, rather than § 351.270. We think not. In using the language "required under applicable State law," § 5 (11) embraced all state law, as the Court of Appeals held. This included the exception of § 351.270 as to those corporations whose articles of incorporation required class voting. The national transportation policy and the provisions of § 5 (11), rather than permitting the result the Court of Appeals reached, require that "the articles of incorporation shall control . . . ." It follows that if a consolidation comes within the requirements of § D (3) of the articles of association, the approval by the separate vote of each class of stock is required. The District Court found that the plan of consolidation did come within § D (3). It is clear that the Court of Appeals did not disturb this finding, although it is not precisely clear what the court found on the question. At one point, it appears to say that "the articles seem to require" separate class voting, while it later assumes that they do so. Subsequently the opinion notes that the court is "not persuaded . . . that MoPac's Articles call for a class vote on a consolidation . . . ." 359 F. 2d, at 119. In any event, we agree with the trial court that the articles do require a separate class vote on the plan. We believe that the provision that the company "shall not . . . (c) alter or change the preferences, qualifications, limitations,

---

[3] Mo. Rev. Stat. § 351.425 provides, in pertinent part: ". . . The plan of merger or consolidation shall be approved upon receiving the affirmative vote of the holders of at least two-thirds of the outstanding shares entitled to vote at such meeting, of each of such corporations."

restrictions and special or relative rights of the Class A Stock or of the Class B Stock" would clearly include the plan of consolidation here. MoPac, by consolidating the two railroads that it already controls, will change its Class A stock from voting shares preferentially entitled to noncumulative dividends of not to exceed $5 per share annually to shares that participate equally in all of the earnings of the company. The Class B stock which now enjoys all of the earnings and the equity in excess of the present Class A preferences would lose those special features. As the Court of Appeals found, the effectuation of the plan would "result in the present Class B holdings being engulfed by the larger number of Class A holdings." 359 F. 2d, at 110. It is apropos to note here that while the equity of each Class A share remains limited to $100, the value of the equity of the Class B shares is approximately $6,500 per share. The plan proposes to exchange four shares of stock of T & M for one share of MoPac Class B, which, under such values, is like exchanging four rabbits for one horse. Moreover, the final proviso of § D (3) requires a separate class vote where any amendment or elimination of any of the provisions of the section itself is proposed. Under the plan this section would be entirely eliminated on the basis of a collective vote rather than a separate class one. But MoPac argues that this would not be "company action." We cannot agree. The boards of directors of MoPac and T & P, which it controls, drew up the plan and now request its approval by the Interstate Commerce Commission. This certainly is "company action" within the terms of the Articles.[4] Indeed,

---

[4] It is interesting to note that the Interstate Commerce Commission itself required that Art. VII, § D (3) be inserted in MoPac's Articles of Association. The Commission's order provided:

"The certificate of incorporation [of the reorganized corporation] shall permit the authorization from time to time of additional shares of common stock of either class, but shall specifically provide that

·this point is so clear that we see no occasion for remanding the issue to the Court of Appeals for its consideration of the point, even though it be assumed that its opinion does not decide it. Effective judicial administration requires that we dispose of the matter here.

We do not, of course, reach the merits of the proposed plan which is the concern of the Commission in the first instance. Any reference to the effect of the plan is not to be construed as in any way passing upon its merits. With reference to voting rights, we hold only that in a consolidation as proposed here, Missouri law must be applied and that § 351.270 of that law requires the application of the Articles of Association of MoPac, which in turn, require the assent of the majority of the shareholders on a separate class-vote basis.

The judgment is, therefore, reversed and the cause remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE FORTAS took no part in the consideration or decision of these cases.

---

the new company shall not alter or change the rights of holders of either class of stock or authorize the issuance of additional shares of either class or of any other class or of participating or convertible preferred stock, without the consent of the holders of not less than a majority of the number of shares of common stock of each class at the time .outstanding." 290 I. C. C. 477, at 665.