**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**Rose SLAYTON et al., Appellees.**

**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**ALLEGHANY CORPORATION et al., Appellees.**

**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**Betty LEVIN, Appellee.**

**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**Jane HARRIS et al., Appellees.**

**Nos. 19250–19253.**

United States Court of Appeals Eighth Circuit.

March 7, 1969.

Certiorari Denied June 2, 1969. See 89 S.Ct. 1998, 1999, 2000.

Thomas J. Guilfoil, of Guilfoil, Symington, Montrey & Petzall, St. Louis, Mo., for appellant, Gerald M. Smith, Mark M. Hennelly and Gilbert P. Strelinger, St. Louis, Mo., on the brief.

Breck P. McAllister, of Donovan Leisure, Newton & Irvine, New York City, for appellees Alleghany Corp. and Empire Trust Co., Granville Whittlesey, Jr., and Robert H. Johnson, New York City, and G. Carroll Stribling, of Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., on the brief.

John Lowenthal, New York City, for appellees Betty Levin, Jane Harris and Nathan Stutch, Maxwell Brandwen of Szold, Brandwen, Meyers & Altman, New York City, and Roberts P. Elam, St. Louis, Mo., Sherin & Lodgen, Boston, Mass., and Ruth W. Friedman, New York City, on the brief.

Harold C. Ackert of Ackert & Tompkins, St. Louis, Mo., and Abraham L. Pomerantz and William E. Haudek of Pomerantz, Levy, Haudek & Block, New York City, for appellees Rose Slayton, Joseph M. Proskauer, Walter Mendelson, Alfred L. Rose and Dorothy B. Rose.

Before VAN OOSTERHOUT, Chief Judge, and MEHAFFY and HEANEY, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This is an appeal by Missouri Pacific Railroad Company (Mo-Pac) from final judgment requiring Mo-Pac to pay attorneys' fees of plaintiffs' counsel aggregating $548,161.00 and $41,926.13 expenses incurred by such attorneys, all in connection with four companion suits identified in the caption hereto, brought by plaintiffs against Mo-Pac and others as a class action on behalf of named plaintiffs and all Class B stockholders of Mo-Pac for declaratory judgment.

The ultimate issue in controversy in the declaratory judgment action was whether Mo-Pac's Class A and Class B common stockholders were entitled to vote separately on a plan of consolidation entered into between Mo-Pac and Texas and Pacific Railway Company which was submitted to the Interstate Commerce Commission for order of approval pursuant to 49 U.S.C.A. § 5. Mo-Pac stated therein that under 49 U. S.C.A. § 5(11), the plan would be submitted to its Class A and Class B stockholders for a collective vote. Mo-Pac had previously announced that the Class B stockholders were not entitled to vote separately on the consolidation plan. At the time of the consolidation proceeding, Mo-Pac had outstanding 1,856,277 shares of Class A stock and 39,731 shares of Class B stock. Each Class A share is entitled to a noncumulative dividend not in excess of $5 per share and to $100 upon liquidation. Upon dissolution Class B is entitled to ratably share in all assets remaining after payment of amount due on the Class A stock. The Class B shares are entitled to such dividends as may be declared by the directors without restriction as to amount. Upon the basis of the net asset value shown by the books of Mo-Pac as of September 30, 1966, the equity of the Class A stock was $100 per share while

that of Class B stock was $5280 per share. The provisions relating to the two classes of stock emerged as a result of the approval of the Mo-Pac reorganization under § 77 of the Bankruptcy Act. See Mississippi River Fuel Corp. v. Slayton, 8 Cir., 359 F.2d 106, 108.

Mississippi River Fuel owned over 50% of the Class A stock; Alleghany owned slightly over 50% of the Class B stock.

The nature and history of the declaratory judgment action is fully set out in the opinion of the District Court granting the declaratory relief prayed (Slayton v. Missouri Pacific R.R. Co., 233 F. Supp. 747), our reversing opinion, (Mississippi River Fuel Corp. v. Slayton, 8 Cir., 359 F.2d 106), and the opinion of the Supreme Court reversing our judgment and remanding the case to the District Court for further proceedings consistent with its opinion (Levin v. Mississippi River Fuel Corp., 386 U.S. 162, 87 S.Ct. 927, 17 L.Ed.2d 834).

The voting rights issue presented by the declaratory judgment action was resolved by the Supreme Court as follows: "With reference to voting rights, we hold only that in a consolidation as proposed here, Missouri law must be applied and that § 351.270 of that law requires the application of the Articles of Association of MoPac, which in turn, require the assent of the majority of the shareholders on a separate class-vote basis." 386 U.S. 162, 170, 87 S.Ct. 927, 932.

In April 1967 the Interstate Commerce Commission at the request of the railroad applicants dismissed the application for consolidation. On June 30, 1967, after receipt of the Supreme Court mandate, the trial court entered an order determining that the actions in these cases had been properly maintained as class actions and adjudging that the proposed plan of consolidation could not be approved or adopted by Mo-Pac without the consent of a majority of the shares of each class of stock. Thereafter, on July 31, after appropriate notice had been given to all Mo-Pac

stockholders and an opportunity had been afforded to be heard, the court ordered that the four cases here involved be dismissed without prejudice, except with respect to the voting rights issue previously adjudicated, with the reservation of the jurisdiction to determine what if any attorneys' fees and expense disbursements should be allowed plaintiffs or their attorneys against any of the defendants. Attorneys claiming fees were directed to file verified claims therefor with supporting briefs and defendants were authorized to file briefs in resistance, and provision was made for an evidentiary hearing. Applications for attorneys' fees were filed by attorneys for each of the plaintiffs, and an evidentiary hearing was held. The court allowed attorneys' fees and expense reimbursement in the amounts previously indicated and entered judgment for such items. The basis for the judgment is set out in the court's memorandum opinion, Slayton v. Missouri Pacific R.R. Co., D.C., 279 F.Supp. 525.

The basic questions raised by the appeal attacking such judgment are:

(1) Under the facts of this case, did the District Court abuse its discretion or not in assessing attorneys' fees and expenses incurred in the declaratory judgment action against Mo-Pac?

(2) If not, are the amounts allowed reasonable, particularly in light of the alleged duplication of effort on the part of counsel for the various plaintiffs?

██ The trial court in its opinion based its allowance of fees and expenses on two findings, both of which Mo-Pac claim are erroneous. The first finding is to the effect that Mo-Pac benefited from the final determination of the voting rights issued by the Supreme Court. There is no value placed upon such benefit nor is such benefit weighed against the benefit derived by the Class B shareholders as a result of the litigation.

In a broad sense, it may be said that the final adjudication of any litigation in which a party has an interest is a benefit to him in that he then knows

what his legal position is. As a result of the declaratory judgment, Mo-Pac was authoritatively advised that in a railroad consolidation proceedings such as the one it had instituted, separate majority consent must be obtained from its Class A stockholders and its Class B stockholders.

The parties primarily interested in the voting rights issue are the Class A and Class B stockholders. The interests of each in upholding their conflicting claims is substantial. Mo-Pac was required in connection with the submission of the consolidation plan to the Interstate Commerce Commission to make the initial determination on the voting rights issue. It seems entirely clear upon the record before us that the controversy in litigation over voting rights would develop which ever way Mo-Pac made the initial decision on the issue. Mr. Lowenthal conceded in his oral argument on behalf of the plaintiffs that if Mo-Pac had brought a declaratory judgment action to determine voting rights, there would have been appearances or interventions by the same parties, to wit, the A and B stockholders.

Forty-nine U.S.C.A. § 5(11) requires inter alia assent to a consolidation plan by the majority of the votes of the holders of stock entitled to vote "unless a different vote is required under applicable State law, in which case the number so required shall assent." Thus, absent the declaratory judgment action, the responsibility for determining whether proper stockholder consent has been given is placed on the Commission in the first instance with review by the courts.

It is undisputed that the Class B stockholders obtained a very substantial benefit from the litigation they instituted and won. By obtaining the separate voting rights, they were able to defeat the consolidation plan which was disadvantageous to the Class B stockholders. The trial court found that the merger as proposed would have taken an equity value of $200,000,000 from B stockholders and given it to the A stockholders.

We in our opinion and the Supreme Court in its opinion both pointed to the fact that the issue of the reasonableness of the plan was not before the court in the declaratory judgment action since the merits of the plan under the Act are the concern of the Commission in the first instance. Nevertheless, the record before us shows that the market value of a Class B share had dropped from a value of $1392 just prior to our decision to $530 just prior to the Supreme Court's granting of certiorari, and that after the decision of the Supreme Court on February 27, 1967, the market value rose to $1875 per share on March 10, 1967. All the plaintiffs named as litigants possessed substantial Class B stock interests. The Pomerantz affidavit in support of the fee claim alleges that based on salvaged market value Alleghany has been benefited in this action in the amount of $26,900,000.00; the intervening plaintiffs in Slayton have benefited in salvaged market value by $336,000.00 and the Harris, Stutch and Levin plaintiffs have been benefited through salvaged market value in the amount of $564,900.00. Based upon the Pomerantz figures for salvaged book value, the Alleghany Corporation has been benefited $127,880,000.00, the Slayton intervening plaintiffs have been benefited $1,598,500.00 and the Harris, Stutch and Levin plaintiffs have been benefited $2,685,480.00.

There can under the record in this case be no doubt that the declaratory judgment actions were instituted primarily for the purpose of establishing separate voting rights and that the actions were instituted primarily for the purpose of obtaining such rights for the Class B stockholders. The benefits obtained for the Class B stockholders from the litigation far outweigh any indirect benefit Mo-Pac may have derived as a result of having the class voting rights adjudicated.

It would be difficult to place a monetary value on the worth to the corporation of the adjudication of the voting rights issue. No effort was made to do

so. Mo-Pac was one of the parties defendant in the litigation and it appeared and defended. Nothing appears in the record that would indicate that anything in the way of diminution of litigation costs would be brought about by plaintiffs bringing the declaratory judgment litigation rather than having such litigation commenced by Mo-Pac or by having it resolved in the Interstate Commerce Commission proceedings. It would be reasonable to suppose that the Interstate Commerce Commission would reach the consent issue early in the proceedings. There is no evidence in the record as to what expense Mo-Pac incurred for its representation by counsel in plaintiffs' suits and it would be entirely speculative to say that the benefit Mo-Pac received from the litigation exceeds the expense it has incurred in connection with the litigation.

■ In the second finding upon which the decision is based, the court determined that the inherent unfairness of the plan is a sufficient reason to award attorneys' fees to the plaintiffs. We find no merit to such ground. As we have previously observed, the fairness of the plan was not at issue or adjudicated in the declaratory judgment proceedings. The trial court recognized this to be true.

Some of the plaintiffs in their petitions alleged fraud and inequitable conduct upon the part of Mo-Pac and its directors and officers and some of the pleadings were aimed at obtaining derivative relief by reason thereof. Such issues were dismissed by the court with the consent of the plaintiffs and were never adjudicated. The trial court recognized this to be the fact in its refusal to award fees against the individual directors of Mo-Pac and against Mississippi River Fuel Corporation, holder of a majority of the Class A stock.

■ We observe that the issue of the right of the named plaintiffs and their attorneys to make a pro rata recovery of fees and expenses against Class B stockholders, who were members of the class on whose behalf the litigation was prosecuted and who benefited from the litigation, is not directly before us in this case. Relief here is sought only against Mo-Pac, certain directors and Mississippi River Fuel Corporation. It is elementary that a corporation is an entity separate and distinct from its stockholders and that earnings of a corporation remain the property of the corporation until severed and distributed as dividends and that a corporation cannot be required to pay obligations which are not its own but those of some of its stockholders. See Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 298 S.W. 91, 97, 56 A.L.R. 1276; Klein v. Board of Tax Supervisors, 282 U.S. 19, 24, 51 S. Ct. 15, 75 L.Ed. 140.

■ In our view, the recent case of Flieschmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475, controls the issue here. While that case involved a rejection of attorneys' fees for the successful prosecution of a suit for deliberate infringement of a Lanham Act trademark, Chief Justice Warren, in the opinion reviewing the underlying principles involved in allowing attorneys' fees to a successful litigant, points out that English courts have allowed attorneys' fees to successful litigants rather freely but that American courts have generally resisted such a movement in that direction. He then states, "The rule here has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." 386 U.S. 714, 717, 87 S. Ct. 1404, 1407. Two reasons are stated in support of the rule, to wit, (1) litigation is at best uncertain and one should not be penalized for merely prosecuting or defending a lawsuit, and (2) the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for judicial administration.

No statutory or contractual provision for attorneys' fees is present in the case before us. The reasons set out by the

Chief Justice for not adopting the English practice fully apply to our present situation.

Our opinion on the voting rights issue demonstrated that we found the issue to be complex and difficult. There is nothing in the Supreme Court's reversing opinion to indicate that the issue lacks substance. The extensive time spent in briefing by plaintiffs' skilled and competent counsel reflects that they found the issue to be troublesome. The long record in support of the fee claim also supports the view that determination of fees puts a substantial burden upon judicial administration.

As the trial court observes, Fleischmann concedes that some exceptions have been made to the general rule. We note that the Court describes the exceptions as limited exceptions. None of the exceptions recognized in *Fleischmann* approaches our present situation.

Some of plaintiffs' briefs argue that the corporate assets constitute a fund. While Mo-Pac doubtless has funds in its possession, the corporate funds in our present situation have not been enhanced or increased by plaintiffs' action nor has plaintiffs' action in any substantial manner preserved funds that would otherwise be lost to the corporation. In such respect, the situation here differs from that in Jesser v. Mayfair Hotel, Inc., Mo., 360 S.W.2d 652, 15 A.L.R.3d 389. In *Jesser* the court among other things found: "[C]orporate shares had a value substantially in excess of either offer which excess would have been lost to the trust estate and ultimately to some or all of the certificate holders if the proposed sale had gone unchallenged." 360 S.W.2d 652, 661. Thus it would appear in *Jesser* assets of the estate were preserved which would have been lost in the absence of plaintiffs' action. Additionally the court in *Jesser* found that the Mayfair Hotel had agreed to reimburse the trustees for expenses incurred in operating the trust and that the litigation expense incurred was properly charged to the trust.

As we read *Fleischmann*, exceptions to the general rule are sparingly granted. The factual situation here does not fall within any exceptions recognized by *Fleischmann*. In Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 167, 59 S.Ct. 777, 780, 83 L.Ed. 1184, the Court with respect to allowance of attorneys' fees in the absence of statutory or contractual provisions states: "[S]uch allowances are appropriate only in exceptional cases and for dominating reasons of justice." The facts before us do not meet such standard.

As heretofore pointed out, all that was actually litigated in the cases here involved was the complex issue of voting rights. The issue of fairness of the consolidation plan was clearly not decided in the litigation for which fees are here sought. The litigated voting rights issue was of primary importance to both the Class A and the Class B stockholders. Any benefit flowing to the corporation as a result of the litigation was incidental and the inescapable result of the litigation. No new fund was created for the corporation nor were any assets of the corporation preserved.

The benefit to the Class B stockholders resulting from the legal victory were substantial. No unreasonable burden will be placed on the plaintiffs by their obligation to pay reasonable fees to counsel whom they employed. In fact, Alleghany has already paid or arranged to pay its attorneys for the work they have done.

It is our view that allowance of fees against the corporation would go well beyond the great weight of existing authority.

We hold that no reasonable basis exists on the record before us for the allowance against Mo-Pac of attorneys' fees and expenses incurred by the plaintiffs in the litigation here involved.

The judgment is reversed.