Jean **AVERY**, Plaintiff-Appellant,

v.

**HOMEWOOD CITY BOARD OF EDUCATION, et al., Defendants-Appellees.**

No. 80–7364.

United States Court of Appeals,
Fifth Circuit.*
Unit B

April 26, 1982.

---

* Former Fifth Circuit Case, Section 9(1) of Public Law 96–452–October 14, 1980.

Gray, Seay & Langford, Montgomery, Ala., Jeremiah A. Collins, Joy Koletsky, Washington, D. C., for plaintiff-appellant.

John W. Williams, Jr., Donald B. Sweeney, Jr., Birmingham, Ala., for Homewood City Bd. of Ed.

Before MORGAN, TJOFLAT and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

Jean Avery brought this action in the district court, alleging that the termination of her teaching contract by the Homewood City Board of Education was unlawful. Following a bench trial, the court concluded that although one of the grounds of Avery's discharge was arguably impermissible, the presence of another, permissible, ground rendered the termination lawful. Accordingly, the court entered judgment for the defendants. The district court erred by holding that the mere presence of a permissible ground for Avery's discharge rendered the discharge lawful. On the record before it, the court was required to enter judgment for Avery. We therefore vacate the judgment of the district court and direct the entry of judgment for the plaintiff.

I.

Jean Avery, a black woman, taught remedial reading at Shades Cahaba Elementary School in Homewood City, Alabama, from 1972 until her discharge on February 8, 1977. A written policy of the Homewood

City Board of Education (the Board) required teachers who became pregnant so to inform the Superintendent of Education (the Superintendent) no later than the fourth month of pregnancy (the notice rule). In mid-November, 1976, Avery, who was not married, informed ·her principal that she was expecting to give birth in late December. The principal commented that Avery was in violation of the notice rule and instructed her to inform the Superintendent of her pregnancy, which Avery did.

Avery and the Superintendent, Dr. French, discussed Avery's situation in early December, 1976. According to Dr. French's testimony, he emphasized Avery's violation of the notice rule. According to Avery, Dr. French urged her to resign because of the "moral issue" of conception out of wedlock.[1]

In any event, Dr. French notified Avery by letter of December 15, 1976, that the Board would meet to determine whether to cancel her contract for three reasons: insubordination, neglect of duty, and immorality. As Superintendent, Dr. French was authorized to recommend Avery's dismissal, and the three grounds stated in the December 15 letter were charges he would be bringing before the Board. As Dr. French testified, both "insubordination" and "neglect of duty" referred to Avery's violation of the notice rule, and "immorality" referred to her pregnancy out of wedlock.

On February 8, 1977, the Board voted to terminate Avery's employment immediately, and instructed Dr. French so to inform Avery. Dr. French did so by letter of February 11, 1977, specifying no reasons for the discharge. At trial, however, Dr. French, who recorded and transcribed the Board's deliberations as its secretary, testified that the reasons for the decision to dismiss Avery were the three grounds specified in the December 15 letter. The decision of the Board was affirmed by the Alabama State Tenure Committee.

Avery sued the Board, Dr. French, and the Board members (collectively appellees),

alleging that her discharge violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976); Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 et seq. (1976); 42 U.S.C. § 1981 (1976); and, because it deprived her of rights guaranteed by the equal protection and due process clauses of the fourteenth amendment, 42 U.S.C. § 1983 (1976). She sought reinstatement with back pay, tenure status, lost benefits, declaratory and injunctive relief, and attorney's fees. Underlying each legal theory in the complaint was the premise that the Board unlawfully based its decision to dismiss Avery on her immoral conception of a child out of wedlock. Avery has at no time claimed that the notice rule is unlawful either facially or as applied.

The district court found that Avery's employment had been terminated in part for immorality and acknowledged that a discharge for that reason might be unconstitutional. However, the court found that it was not necessary to reach the issue:

> Immorality was only one of the grounds for termination. Defendants contend that the plaintiff's employment was also terminated on the grounds of insubordination or neglect of duty in not reporting her pregnancy. Clearly she did not comply with the school rules with respect to reporting.... The notice rule ... is reasonable, and the School Board was justified in terminating her for this refusal. That being the case, the court finds it unnecessary to reach the constitutional issue and the other issues raised by plaintiff.

II.

The district court held in effect that, without regard to the immorality charge, Avery's dismissal was lawful because it was based in part on a permissible ground. This holding contravened the standards of proof and causation mandated by the Supreme Court for mixed-motive discharge cases

---

1. No distinction was made at trial or on appeal among conception, pregnancy, and delivery out of wedlock. This case requires no such distinc-

tion, and we use the three terms interchangeably.

such as this one. In *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), a teacher, who had previously been involved in an altercation with another teacher, an argument with school cafeteria employees, and incidents in which he swore at and made obscene gestures to students, communicated to a radio station the substance of a memorandum from his principal relating to teacher dress and appearance. The radio station announced the adoption of the dress code as a news item. Thereafter, the school board advised the teacher that he would not be rehired, citing his lack of tact in handling professional matters, with specific reference to the radio station and obscene gesture incidents. Claiming that the discharge violated his first and fourteenth amendment rights, the teacher sought reinstatement and damages in a suit against the school board. The district court concluded that the communication to the radio station was protected by the first amendment, and that because it had played a substantial part in the decision to discharge the teacher, he was entitled to reinstatement with back pay. The court of appeals affirmed. On certiorari, the Supreme Court vacated the judgment of the court of appeals and remanded the case.

The Court concluded that the fact that constitutionally protected conduct played a substantial part in the termination decision did not necessarily indicate a constitutional violation justifying remedial action. 429 U.S. at 285, 97 S.Ct. at 575. Rather, the proper test would protect against the invasion of constitutional rights without commanding consequences not necessary to the assurance of those rights:

> Initially, ... the burden was properly placed upon [the plaintiff] to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him.

[Plaintiff] having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to [plaintiff's] reemployment even in the absence of the protected conduct.

*Id.* at 287, 97 S.Ct. at 576 (footnote omitted).

The framework of proof established in *Mt. Healthy* applies to Avery's constitutional claims.[2] The burden was initially on Avery to show that her conduct was constitutionally protected and was a substantial or a motivating factor in the Board's decision to discharge her. We assume, *arguendo*, that Avery's out of wedlock pregnancy was constitutionally protected. The district court found that the pregnancy was one of the reasons for Avery's discharge; the appellees did not dispute at trial that a motivating factor in Avery's discharge was immorality, and do not challenge the district court's finding to that effect on appeal.

■ Having found that Avery had carried her initial burden, the district court should have gone on to determine whether the appellees had proven by a preponderance of the evidence that they would have discharged Avery even in the absence of her out of wedlock pregnancy. Since the court instead held that the other, unchallenged, ground for Avery's dismissal rendered the Board's decision lawful, the district court's judgment must be vacated.

### III.

■ Having concluded that the district court's application of the wrong framework of proof caused it to neglect an essential factual inquiry, our usual course would be to remand the case to the district court for that inquiry. Having thoroughly reviewed the record, however, we are convinced that the district court could not permissibly find

---

2. As noted at p. 341, *infra*, we depart from the usual sequence in this case by addressing the constitutional claims before the statutory claims. Therefore, we need not decide whether the *Mt. Healthy* analysis would apply to Avery's claims under 42 U.S.C. § 2000e, *et seq.*, 20 U.S.C. § 1681, and 42 U.S.C. § 1981.

that the appellees proved by a preponderance of the evidence that the Board would have discharged Avery even absent her out of wedlock pregnancy.

■ The appellees insist that the record shows that Avery's violation of the notice rule was a substantial factor in the Board's decision to discharge her. This is correct, but irrelevant; the appellees' burden was to prove not that their decision was substantially motivated by that violation, but rather that Avery would have been dismissed even in the absence of her out of wedlock pregnancy. The record includes no evidence whatever to permit that inference. Dr. French charged Avery with immorality when he recommended her discharge and, according to Dr. French's testimony, the reasons for her discharge were the three grounds specified in his December 15 letter. Neither Dr. French nor the one Board member who testified offered any evidence, direct or circumstantial, to suggest what they would have done about Avery's violation of the notice rule if she had been married.[3] The appellees offered no evidence of the Board's treatment of married teachers who had violated the notice rule.[4] Since no evidence in the record supports the proposition that Avery would have been dismissed absent consideration of her out of wedlock pregnancy, we would set aside as clearly erroneous a finding by the district court that the appellees proved that proposition by a preponderance of the evidence. Fed.R. Civ.P. 52(a). Therefore, we find that the appellees did not carry their burden to show that they would have discharged Avery even absent her asserted immorality.[5]

## IV.

■ The only remaining question is whether a discharge on account of pregnancy out of wedlock is, as Avery maintains, unlawful. As we have noted, Avery challenges her dismissal on both statutory and constitutional grounds. Ordinarily, we would address the statutory claims first. However, the presence in this case of controlling authority that Avery's discharge on account of unwed pregnancy was unconstitutional counsels that we address Avery's constitutional claims first.

In *Andrews v. Drew Municipal Separate School Dist.*, 507 F.2d 611 (5th Cir. 1975), *cert. dismissed as improvidently granted*, 425 U.S. 559, 96 S.Ct. 1752, 48 L.Ed.2d 169 (1976), the defendant school district automatically disqualified from employment any parent of an illegitimate child. In a suit brought by an affected teacher aide and an affected applicant for a position as a teacher aide, we held that the prohibition against the employment of unwed parents violated the equal protection clause of the fourteenth amendment. Inquiring whether the classification established by the school district's policy was rationally related to a legitimate government interest, we rejected all three rationales offered in support of the contention that the rule furthered the creation of a properly moral scholastic environment: (1) that unwed parenthood is prima facie proof of immorality; (2) that unwed parents are unfit role models; (3) that employment of an unwed parent in a scholastic environment materially contributes to the problem of school-girl pregnancies. *Id.* at 614.

The appellees argue, as did the school district in *Andrews*, that unwed parenthood is *per se* proof of immorality and that a parent of an illegitimate child is an unfit role model. The appellees offer no support

---

3. Conversely, Dr. French did testify that he would have recommended her discharge for immorality even if she had given timely notice of her pregnancy.

4. Avery offered documentary and testimonial evidence that the Board continued to employ married teachers who tardily notified the Superintendent of their pregnancies. That evidence, however, was somewhat equivocal, and we do not consider it in reaching our decision.

5. Although we do not customarily make such factual findings, our authority to do so on a record permitting only one factual inference is clear. *See, e.g., Grosso v. United States*, 390 U.S. 62, 71–72, 88 S.Ct. 709, 715, 19 L.Ed.2d 906 (1968); *Levin v. Mississippi River Fuel Corp.*, 386 U.S. 162, 170, 87 S.Ct. 927, 932, 17 L.Ed.2d 834 (1967); *Felder v. United States*, 543 F.2d 657, 671 (9th Cir. 1976).

for either assertion that was not before us in *Andrews*, nor do the appellees offer any meaningful distinction between *Andrews* and this case.[6]  Therefore, we hold that Avery's discharge was in violation of her rights under the equal protection clause of the fourteenth amendment.  So holding, we need not reach her other claims.

The judgment of the district court is vacated.  The case is remanded to the district court, which is instructed to determine the relief to which Avery is entitled and to enter judgment accordingly.

VACATED and REMANDED, with instructions.

---

**6.**  One reason for our conclusion in *Andrews* that the first rationale offered by the school district was unconstitutional was that unwed parents were denied a due process hearing to which employees charged with other immoral conduct were entitled.  *Id.* at 616.  Avery was not denied a hearing.  The equal protection component of the *Andrews* analysis is nonetheless applicable here.  Furthermore, the discussion of due process in *Andrews* was dictum, since the holding of the case was that the school district's policy created an irrational classification and therefore violated the equal protection clause.  *See id.* at 614, 617.

