728 F.2d 160
 16 Ed. Law Rep. 414
 Harvey L. COHEN, Plaintiff-Appellee-Cross-Appellant,
v.
BOARD OF EDUCATION, SMITHTOWN CENTRAL SCHOOL DISTRICT, NO.
1, Defendant-Appellant-Cross-Appellee.
 Nos. 338, 339, Dockets 83-7513, 83-7515.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 17, 1983.
Decided Feb. 27, 1984.
 
 Martin J. Crowley, Smithtown, N.Y. (Craig F. Meltzer, Smithtown, N.Y., of counsel), for defendant-appellant-cross-appellee.
 Frederic Block, Smithtown, N.Y. (Block & Costa, Smithtown, N.Y., of counsel), for plaintiff-appellee-cross-appellant.
 Before KAUFMAN, VAN GRAAFEILAND and HAYNSWORTH*, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 The Board of Education, Smithtown Central School District, No. 1, appeals and plaintiff, Harvey Cohen, cross-appeals from a judgment of the United States District Court for the Eastern District of New York (Mishler, J.), which ordered the Board to reinstate Cohen as a tenured English teacher with back pay and employment benefits, but awarded him no damages for the emotional and mental distress associated with his unlawful discharge.
 
 
 2
 On September 1, 1971, the School District employed Cohen as an English Department Chairman under an employment contract which terminated in 1975. Although Cohen and the Board entered into another five-year contract in 1975, the Board eliminated the position of Chairman in 1979, and on April 10, 1979, appointed Cohen to a full-time teaching position. Because Cohen previously had had teaching tenure in the New York City School System, he needed to complete only a two-year probationary period with Smithtown before becoming eligible for tenure in that district. N.Y.Educ.Law Sec. 2509(1)(a). On March 27, 1981, Cohen's employment as teacher was terminated. Because less than two years had elapsed since Cohen was appointed as a full-time teacher, he was not eligible for tenure unless he could be found to have served as a teacher during his term as Chairman.
 
 
 3
 Cohen contends in this suit that the major portion of his time as English Department Chairman involved teaching English and, consequently, that he had acquired tenure as a teacher before he was discharged. He contends further that he was deprived of due process because his termination from tenured employment was effected without a hearing. The case was bifurcated for trial. The first jury found, in response to special interrogatories, that, in each of the years between 1971 and 1979, Cohen had spent more than 50% of his time teaching. Based on this finding, the district court found that Cohen's termination without a hearing violated his right to due process. The second jury returned a special verdict finding that Cohen suffered emotional distress and/or mental anguish but that the amount of his damage was "$0". The Board asks us to set aside the first jury's verdict. Cohen asks us to set aside the second jury's. We shall do neither.
 
 
 4
 Because of provisions in the New York Education Law with which we are not concerned here, the parties agree that Cohen could not have acquired tenure as an administrator. See Coates v. Ambach, 52 A.D.2d 261, 264, 383 N.Y.S.2d 672 (1976), aff'd mem., 42 N.Y.2d 846, 397 N.Y.S.2d 630, 366 N.E.2d 290 (1977). However, if Cohen spent a substantial portion of his administrative years performing the duties of a teacher, he could acquire tenure as a teacher. "The fairest method of determining the tenure area to which an employee belongs appears to be by reference to the time of the normal workday spent teaching and that spent administrating." Maine-Endwell Teachers Ass'n v. Maine-Endwell Cent. School Dist., 92 A.D.2d 1052, 1053, 461 N.Y.S.2d 537 (1983); see Griffith v. Board of Educ., Mount Pleasant Central School Dist. No. 1, 43 A.D.2d 953, 352 N.Y.S.2d 214 (1974). That was the sole issue presented to the jury on the first trial.
 
 
 5
 Judge Mishler was unsure whether, for the years 1975-79, Part 30 of the Rules of the Board of Regents of the University of the State of New York, N.Y.Admin.Code Tit. 8, Part 30, Sec. 30.1(g), which defines "substantial portion" as 40%, or the traditional 50% rule, Coates v. Ambach, supra, 52 A.D.2d at 263, 383 N.Y.S.2d 672, was applicable to this case. Accordingly, he had the jury answer interrogatories based on both percentages. Although it appears that the 50% rule was the proper one, the jury's affirmative findings on the 50% interrogatories moot any claim of error related to the 40% calculations.
 
 
 6
 There also was considerable dispute in the trial court concerning whether the percentage of Cohen's teaching time should be computed with relation to a teacher's total hours or an administrator's total hours. While arguing vigorously and successfully for the former in the district court, Cohen's counsel concedes on appeal that the question is "somewhat nettlesome." We think this is a quite modest concession. A review of the New York cases and the decisions of the Commissioner of Education makes it quite clear that, in order to acquire teaching tenure, Cohen had to show that more than one half of "his" working time was spent on the duties of that position during his probationary period. See Maine-Endwell Teachers Ass'n v. Maine-Endwell Cent. School Dist., supra, 92 A.D.2d at 1053, 461 N.Y.S.2d 537; Coates v. Ambach, supra, 52 A.D.2d at 263, 383 N.Y.S.2d 672; Matter of Farrand, 13 Ed.Dept.Rep. 72, 74 (1973); Matter of Engelson, 7 Ed.Dept.Rep. 144, 145 (1968); Matter of Angel, 3 Ed.Dept.Rep. 238, 239 (1964). Accordingly, Cohen's teaching hours should have been measured against his total working hours, not against the working hours of other teachers. This distinction has relevance in the instant case because administrators' work years customarily were 13-18 days longer than teachers' and these additional days should have been factored into the percentages.
 
 
 7
 Judge Mishler was not convinced that Cohen's counsel was interpreting the law correctly on this issue, and asked counsel whether he wanted to take a chance on the charge being wrong. Counsel replied that he was "willing to run the risk." Ordinarily we would take him at his word. However, our own review of the factual issues convinces us that the jury's verdict was undeniably correct and, in the interest of judicial economy, we are going to affirm the judgment as entered. See Levin v. Mississippi River Fuel Corp., 386 U.S. 162, 170, 87 S.Ct. 927, 932, 17 L.Ed.2d 834 (1967).
 
 
 8
 In three of the years between 1971 and 1979, Cohen taught three classes a day out of a possible daily total of five during the entire teaching year of 183 days. Accordingly, even allowing for the 13-18 days that he worked full time as an administrator, it is clear that he spent more than 50% of his working year as a teacher.
 
 
 9
 The only damage questions presented to the second jury were whether the violation of Cohen's constitutional rights caused him emotional distress and/or mental anguish, and if so, the amount of his damages. Cohen's attorney told the jury at the outset that Cohen was going to have restored all the benefits he had lost as the result of his termination, including the back salary to which he was entitled, his seniority rights, and his pension rights, or, in the attorney's own words, "to be made whole, in other words, just as if he had continued to teach without wrongfully disemployed [sic]." The court instructed the jury that the court would handle those issues. The jury also learned during the trial that, in contrast to Cohen's teaching salary of $28,000 per year, he grossed $99,000 in commissions as a bond salesman during 1982.
 
 
 10
 For many years, courts refused to permit any recovery for non-traumatic mental suffering "upon the elementary principle that mere mental pain and anxiety are too vague for legal redress...." Southern Express Co. v. Byers, 240 U.S. 612, 615, 36 S.Ct. 410, 411, 60 L.Ed. 825 (1916) (quoting Cooley on Torts, 3d Ed., p. 94). Although the proscription against recovery gradually is giving way to more enlightened judicial philosophy, see Kaufman v. Western Union Tel. Co., 224 F.2d 723, 728-31 (5th Cir.1955), cert. denied, 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956), the most enlightened of philosophies cannot remove the vagueness, particularly where, as here, the only evidence on the issue is subjective. During the voir dire, the jurors were asked whether they were prejudiced against psychiatrists. However, despite Cohen's testimony concerning psychiatric consultations, he produced no medical evidence in support of his claims. It was obvious that this troubled the jurors, because, during their deliberations, they asked the court whether an affidavit from a psychiatrist or psychologist could have been used as evidence.
 
 
 11
 Under the circumstances, we are not prepared to hold that plaintiff was entitled to recover any substantial sum for his mental distress. Although it might have been better practice for the district court to have instructed the jury to return a verdict of $1.00, see, e.g., Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978), McCann v. Coughlin, 698 F.2d 112, 126 (2d Cir.1983), Judge Mishler decided that, because he would be entering a judgment for back pay, he didn't think it was necessary. Moreover, Cohen's counsel made no request for such an instruction. In view of the jury's knowledge of Cohen's reinstatement and other remedies, Judge Mishler properly resolved any apparent inconsistency in the special verdict. See 5A Moore's Federal Practice p 49.03 (1982).
 
 
 12
 The judgment of the district court is affirmed.
 
 
 
 *
 Of the United States Court of Appeals for the Fourth Circuit, sitting by designation