REVISED, June 17, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-30976

C & B SALES & SERVICE INC

Plaintiff - Appellant

VERSUS

MAXWELL C MCDONALD, JR, ET AL

Defendants

MAXWELL C MCDONALD, JR

Defendant - Appellee

Appeal from the United States District Court
For the Western District of Louisiana
June 14, 1999

Before REAVLEY, DAVIS, and DUHÉ, Circuit Judges

DUHÉ, Circuit Judge:

The district court on remand held that Plaintiff C & B Sales & Service, Inc. had not submitted sufficient evidence to prove the damages it suffered as a result of Maxwell McDonald's breach of his fiduciary duty. The district court placed the burden on C & B to prove both McDonald's revenues from and his costs of the business

he did in breach of his duty.  Because we read the prior panel's opinion as placing the burden on C & B to prove McDonald's revenues and the burden on McDonald to prove his costs, we reverse.  For reasons of judicial economy and because undisputed financial information in the record permits, we render judgment for C & B against McDonald for $1,500,000.00 plus interest and costs.

FACTS AND PROCEEDINGS

Maxwell McDonald was an employee and later officer and director of  C & B Sales & Service, Inc. ("C & B"), which serviced and leased gas compression equipment.  McDonald, without the knowledge of C & B, joined with Robert Humphrey and Compression Components Corp. ("CCC")[1] in purchasing and selling used gas compression equipment.  McDonald and Humphrey subsequently created Compressor Operating, Inc. ("COI"), which leased gas compression equipment.  McDonald's involvement with Humphrey, CCC, and COI came to C & B's attention during negotiations to sell C & B.  C & B sued McDonald, Humphrey, CCC, and COI for racketeering, breach of fiduciary duty, fraud, negligent misrepresentation and unfair trade practices.  The district court held that McDonald breached his fiduciary duty to C & B, and awarded damages based on McDonald's pro rata shareholder bonus from the sale of C & B.  The district court dismissed all other claims.  C & B appealed the amount of the damages award and the dismissal of its other claims; McDonald cross-appealed the amount of the damages award and the breach of fiduciary duty determination.  A panel of this court ("the first

---

[1]Humphrey was owner and president of CCC.

2

panel") affirmed the breach of fiduciary duty claim and the dismissal of the remaining claims. The first panel vacated the damages award for lack of a nexus between McDonald's breach of fiduciary duty to C & B and the amount awarded, and remanded the damages issue. On remand, the district court held again that C & B sustained damages as a result of McDonald's fiduciary breach. However, the district court also held that "the degree of or amount of damages was not proven with sufficient clarity," C & B Sales & Serv. Inc. v. McDonald, No. 91-1201, p.6 (W.D. La. filed Aug. 20, 1997) (memorandum ruling), and awarded nothing. C & B appeals.

ANALYSIS

As this second appeal demonstrates, a great deal of confusion surrounds the term "damages." In its first opinion, the district court equated "damages" with "profits," focusing exclusively on whether C & B submitted sufficient evidence of McDonald's profits from his breach of fiduciary duty. The district court noted:

> McDonald would owe C & B the **profits** he received from the transactions involving Humphrey, COI and/or CCC. 'Profits' by definition are 'The excess of the selling price of goods over their cost.' Accordingly, plaintiff's burden was to present evidence upon which this Court could base its calculations of the money received by McDonald - less his cost to obtain and sell the equipment at issue. . . . [C & B's accountant] did not establish with any degree of credibility the amount of profits which McDonald actually received as a result of the transactions. Given the periodic settling up by McDonald and Humphrey, the amount for which a piece of equipment was sold or leased was not necessarily the amount McDonald received as a result of the sale.

C & B Sales & Serv. Inc. v. McDonald, No. 91-1201, p.31, 35 (W.D.

3

La. filed Feb. 18, 1994) (memorandum ruling). [2] The district court "did not find sufficient credible evidence to establish the base cost, to McDonald, of the equipment purchased to offset against the amount ultimately received by McDonald . . . ." <u>Id.</u> at 34. The district court, acknowledging that McDonald's accounting practices were "convoluted with only periodic accounting," <u>id.</u> at 32, utilized article 1999 of the Louisiana Civil Code, which permits courts to reasonably assess damages when they are insusceptible of precise measurement. <u>See</u> La. Civ. Code Ann. art. 1999 (West 1987). The court assessed damages as the amount of McDonald's shareholder bonus from the sale of C & B.

The first panel reversed and remanded the damages award as having no nexus with McDonald's fiduciary breach. First, the panel acknowledged that the plaintiff in a breach of fiduciary duty case need show only the agent's gain, not the plaintiff's actual loss. <u>See</u> <u>C & B Sales & Serv. Inc. v. McDonald</u>, 95 F.3d 1308, 1314 (5th Cir. 1996). In sum, C & B bore the burden of proving McDonald's revenues from his breach of duty, while McDonald bore the burden of proving the costs incurred in achieving those revenues. <u>See</u> <u>id.</u> at 1318. Second, the panel held that C & B failed to show with specificity the revenues McDonald received; therefore, the burden never shifted to McDonald to show profits. <u>See</u> <u>id.</u> However, the panel acknowledged that article 1999 permits a reasonable

---

[2]The district court found C & B's accountant's report fatally flawed based on its underlying cost assumptions. The district court did not discredit the credibility of the underlying data establishing revenues.

4

approximation of damages when they can not be determined with specificity. See id. The panel remanded to the district court for further consideration of damages under article 1999. See id.

We read the first panel's opinion as directing that the same burden shifting that applies to the breach of fiduciary duty damages determination applies to the article 1999 damages determination on remand. First, the panel suggested examining the approximate gross revenues of McDonald and his cohorts, noting that McDonald bore the burden of showing expenses. See id. Second, this interpretation is consistent with the district court's credibility determinations in its first opinion. That court deemed C & B's accountant's report fatally flawed not because of the underlying data utilized or the revenue determinations, but because of cost assumptions. See C & B Sales & Serv. Inc. v. McDonald, No. 91-1201, p.6 (W.D. La. filed Feb. 18, 1994) (memorandum ruling). Such a credibility finding would not inhibit the trial court's ability to assess approximate revenues from the underlying data. Therefore, in assessing damages under article 1999 on remand, the district court should have placed the burden of approximating McDonald's revenues on C & B, and the burden of approximating McDonald's costs on McDonald.

The district court's opinion on remand reexamined whether C & B submitted sufficient evidence for the court to approximate **profits**, never examining as dictated by the panel's opinion whether C & B submitted sufficient evidence for the court to approximate **revenues**. The district court on remand cited extensively to and

5

incorporated language from its first opinion, which had focused exclusively on C & B's failure to prove profits. For example, the district court on remand stated:

> The evidence presented does not afford this Court a reasonable or a reliable basis to separate the financial activities of the entities, i.e., COI and CCC and their **profits**. Again, this Court made a specific finding in its initial ruling that plaintiff had failed to carry the burden of proof to establish with sufficient credible evidence what **profits** defendant, McDonald, received. . . . [T]he plaintiff [has not] presented sufficient credible evidence to establish the profit McDonald, COI, CCC and Humphrey received and/or the profit McDonald received alone.

C & B Sales & Serv. Inc. v. McDonald, No. 91-1201, p.6 (W.D. La. filed Aug. 20, 1997) (memorandum ruling).

We note that the district court found the report on which C & B's accountant relied fatally flawed, and therefore found C & B's accountant not credible.[3] We review these credibility determinations for clear error. See Fed. R. Civ. P. 52(a); Justiss Oil Co. v. Kerr-McGee Ref. Corp., 75 F.3d 1057, 1067 (5th Cir. 1996). The district court did not clearly err in finding the report and the accountant not credible. Therefore, we rely on neither the report nor the accountant in reviewing the damage determination.

C & B submitted in evidence "item files." The item files summarize and contain invoices, checks, and journal entries detailing McDonald's transactions with CCC and COI. In addition, C & B and McDonald submitted Joint Exhibit 1, containing C & B's summary of the financial transactions in the item files and

---

[3]As noted above, the district court found the cost assumptions and cost allocations flawed, not the revenue data.

6

McDonald's comments on and objections to the information in the item files. The district court did not address these item files in its first opinion, or its opinion on remand. There is no indication in the record that the district court did not find these files credible. In addition, the record reflects that McDonald and CCC evenly shared costs and revenues in their joint transactions, and that McDonald and Humphrey each owned 50% of COI.

Although the record does not allow calculation of McDonald's gains to the penny, the law does not require such specificity; article 1999 and Circuit precedent require only a reasonable approximation. See, e.g., La. Civ. Code Ann. art. 1999 (West 1987); C & B Sales & Serv. Inc. v. McDonald, 95 F.3d 1308, 1319 (5th Cir. 1996); Austin v. Parker, 672 F.2d 508, 522 (5th Cir. 1982). McDonald's gain from his fiduciary breach, approximated from the undisputed revenue and cost data in the record, is at least $1,500,000.00.

McDonald's breach of fiduciary duty to C & B involved a continuing, ongoing operation involving interrelated transactions spanning a period of three years. McDonald should not escape liability for his fiduciary breach because his scheme was long and involved. To avoid this result, we approximated the total revenues received by McDonald over the three year period, and approximated the total costs incurred by McDonald over the three year period.[4]

_____

[4]The financial records indicate that Humphrey purchased, rented, and sold most of the equipment on behalf of Humphrey's and McDonald's joint ventures. CCC then invoiced McDonald for McDonald's 50% of costs, and McDonald invoiced CCC for McDonald's 50% of the proceeds.

In approximating the total revenues McDonald received as a result of his fiduciary breach, we reviewed the invoices and canceled checks summarized in the joint exhibit and included in the item files.[5] Most files involving McDonald and CCC transactions contained: an invoice from CCC to the purchaser listing the item being sold and the sales price; an invoice from McDonald to CCC listing the item and McDonald's 50% share of the proceeds; either a canceled check from CCC to McDonald indicating a McDonald invoice number, or the relevant McDonald invoice marked paid, listing a CCC check number. We summed the amounts received by McDonald as evidenced by the invoices and canceled checks to arrive at approximate revenues from McDonald and CCC transactions. Most files involving COI contained: a lease agreement including rental terms or an invoice from CCC or COI to C & B listing the equipment and sales price; an invoice from COI to C & B listing the item and the rental due or the sales price or an invoice from McDonald to CCC listing the item and McDonald's 50% share of the sale or rental price; some indicia that C & B paid the invoice.[6] Since McDonald testified to a 50% interest in COI, we summed the amounts received by COI as evidenced by the leases, invoices and indicia of payment, and divided the total in half to arrive at McDonald's approximate

---

[5]We disregarded files for transactions not involving McDonald or for transactions unrelated to McDonald's fiduciary breach.

[6]Indicia included copies of canceled checks from C & B to COI or wire payments from Hanover on behalf of C & B. If the record indicated that COI invoiced C & B but did not indicate that C & B had paid the invoice or that COI had received payment, we did not include that amount in our approximation of revenues.

revenues from COI transactions.  We then summed the amounts received by McDonald from CCC transactions and COI transactions to arrive at the total approximate revenues McDonald received by breaching his fiduciary duty to C & B.

In approximating the total costs McDonald incurred from conduct breaching his fiduciary duty to C & B, we reviewed the invoices, journal entries and canceled checks summarized in the joint exhibit and included in the item files.  Most files involving CCC transactions contained: journal entries indicating the cost to McDonald; invoices from CCC to McDonald listing the item and McDonald's 50% share of the acquisition cost and other expenses related to the item; a canceled check from McDonald to CCC listing CCC invoice numbers.[7]  We summed the costs incurred by McDonald as evidenced by the invoices and canceled checks to arrive at approximate costs incurred by McDonald from McDonald and CCC transactions.  For most of the transactions involving COI, COI had purchased the equipment from CCC at CCC's cost of acquisition. Humphrey and McDonald each bore 50% of the costs and each received 50% of the revenues associated with the McDonald and CCC transactions, and Humphrey and McDonald each owned 50% of COI. Therefore, McDonald's 50% of the sale proceeds from CCC to COI

---

[7]In those instances in which McDonald paid for the acquisition of an item or related expenses, McDonald issued an invoice to CCC listing the item and the 50% of the cost attributed to CCC.  These invoices were generally marked paid, listing a CCC check number. We attributed an equal amount of costs to McDonald, based on his testimony and C & B's assertion that McDonald and CCC each bore 50% of the costs and received 50% of the revenues from their joint transactions.

offset the 50% of COI's acquisition cost attributed to McDonald, leaving as a cost only the 50% of CCC's acquisition cost already accounted for by the CCC transactions.  In those cases in which CCC sold equipment to COI for more than CCC's acquisition cost, we considered the appropriate amount as McDonald's costs.  Likewise, we attributed 50% of all costs other than acquisition costs to McDonald.  We then summed the costs incurred by McDonald from McDonald and CCC transactions and McDonald and COI transactions to arrive at the total approximate costs McDonald incurred from conduct breaching his fiduciary duty to C & B.

We render judgment for C & B in the amount of McDonald's approximate gain, $1,500,000.00 plus interest and costs.  We render rather than remand for reasons of judicial economy[8] and because undisputed data in the trial record indicate the appropriate damage award.  See, e.g., 28 U.S.C.A. § 2106 (1994) (authorizing appellate courts to dispose of cases "as may be just under the circumstances"); Grosso v. United States, 390 U.S. 62, 71 (1968) (finding authority in 28 U.S.C. § 2106 for rendering rather than remanding on a factual issue when the record  would permit only one finding); Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., 960 F.2d 564, 566-67 (5th Cir. 1992) (rendering the quantum of attorney fees on appeal to save the court and parties from further appeals

---

[8]C & B sued McDonald in 1991.  Since then, the parties have endured a trifurcated trial, an appeal on the merits and damage award, a remand on the issue of damages, and an appeal of the district court's determination on remand.  The district court has made great efforts in managing this litigation, but has professed its inability to calculate a damages award based on the record. Rendering will avoid further litigation.

10

and because "no useful purpose would be served by further delaying its final disposition"); <u>Avery v. Homewood City Bd. of Educ.</u>,674 F.2d 337, 341 n.5 (5th Cir. 1982) (rendering on a fact issue when, based on the record, any other finding by a district court would be deemed clearly erroneous); <u>Ferrero v. United States</u>, 603 F.2d 510, 515 (5th Cir. 1979) (noting that the Fifth Circuit would compute the damage award rather than remand to the district court when the evidence before it was as complete as it was at trial); <u>id.</u> (rendering a damage award when remand would be mere wasted motion); *In re* Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation, 56 F.3d 295, 312 (1st Cir. 1995) (rendering attorney fees on appeal, because the record "was sufficiently developed that [the Court of Appeals could] apply the law to the facts . . . and calculate a fair and reasonable fee without resorting to remand"); <u>id.</u> at 311 (noting that the district court's abuse of discretion in reallocating attorney fees on remand, the voluminous record, and the amount of time, energy and money already spent in resolving the issue justified the reviewing court's rendering rather than remanding); <u>Matter of Marchiando</u>, 13 F.3d 1111, 1114 (7th Cir. 1994) (noting that when the facts are not disputed, the reviewing court may make a factual finding without remanding); <u>Felder v. United States</u>, 543 F.2d 657, 671 (9th Cir. 1976) (rendering a damage award giving due regard to the trial court's credibility determinations, because rendering required arithmetic calculations that the reviewing court could perform as easily as the trial court); <u>Universal Athletic Sales Co. v.</u>

<u>Salkeld</u>, 511 F.2d 904, 907 (3d Cir. 1975) (noting that the reviewing court could render rather than remand for determination of copyright infringement where the record was fully developed and there were no credibility issues); <u>Wulff v. Signleton</u>, 508 F.2d 1211, 1214 (8th Cir. 1974) (noting that effective judicial administration requires disposal of a case on appeal rather than remanding where the point to be decided is clear); <u>id.</u> (reaching the merits despite direct authority to do so because of the circumstances of the case and judicial economy).

**REVERSED AND RENDERED**